```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                           TAMPA DIVISION
```

CHAD BURKE,

    Plaintiff,

v.                              Case No.:   8:17-cv-993-T-33JSS

HILLSBOROUGH COUNTY SCHOOL BOARD,

    Defendant.

_____/

**<u>ORDER</u>**

    Pro se Plaintiff Chad Burke is the parent of a minor child with Autism, "A.B." A.B. is a gifted third-grade student with a disability who is eligible to receive exceptional student services. Burke seeks judicial review of the Final Order entered on February 3, 2017, by the Administrative Law Judge pursuant to an evidentiary hearing. In the Final Order, the ALJ denied A.B.'s Request for Exceptional Student Education Due Process in its entirety. (Doc. # 23-4 at 161-209). Burke filed his brief on October 17, 2017 (Doc. # 26), and the School Board filed its Response Brief (Doc. # 28) on November 17, 2017. Burke filed his Reply (Doc. # 29) on November 30, 2017. For the reasons that follow, the Court dismisses the case.

**I.    <u>Background Discussion</u>**

    A.B. is a former elementary school student of the Hillsborough County School District. A.B. was enrolled in

Bevis Elementary School starting in the first grade. (Doc. # 23-4 at 163). A.B. receives exceptional student education services under the Autism Spectrum Disorder, Speech Impaired, and Language Impaired eligibility categories. (Id.). During A.B.'s time at Bevis, he frequently engaged in challenging, unsafe, and inappropriate behaviors, including but not limited to:

> pushing, hitting, pinching, biting, kicking, loud vocalizations/yelling, property destruction, eloping, escaping out of windows, running around the classroom, throwing things, forcefully grabbing and groping adults, hair pulling, stabbing others, putting inedible objects in his mouth, pushing and knocking over furniture, etc.

(Doc. # 28 at 5-6). During the ALJ hearing, credible witnesses descried A.B.'s classroom destruction, including "damaging bookcases, pulling cords from computers and sockets, pulling down and knocking down numerous items throughout the classroom, dumping glue all over the floor, [and] swinging a meter stick." (Doc. # 23-4 at 179). The classroom started as a vibrant and rich setting for young minds to explore. (ALJ Hearing Tr. at 380). However, to accommodate A.B., the stimulating learning tools were removed. (Id. at 561-62). Bookcases that were once accessible to the students were turned so that the books face the wall because A.B. was prone

to climbing bookcases. (Id. at 561). The art supply cabinets had to be "zip-tied shut." (Id. at 381).

During the ALJ hearing, A.B.'s teachers testified that he violently attacked them. One ESE teacher, Ms. Rissler, testified that A.B. bit her so hard that she has to wear a brace on her arm and she requires continuing medical care, including an MRI. (ALJ Hearing Tr. at 542). Another teacher testified that A.B. tried to pull down children in the playground when the children were on top of playground equipment, such as monkey bars, posing a real threat of physical injury to his peers. (Id. at 617). A.B. yells threats such as "I'm going to shoot you." (Id. at 518).

A.B.'s classroom has to be evacuated when A.B. displays unsafe behaviors or when he is in crisis. (Id. at 604). During the evacuations, which are frequent and "extremely tense," the other students in the class are displaced on a moment's notice and divested of the opportunity to learn. (Id. at 384-86). Sometimes, the other students are "evacuated" to the cafeteria when other students are eating lunch, which is obviously "not an ideal environment for the other kids to be learning." (Id. at 386).

School Principal Melanie Cochrane testified that she has 875 students under her care at Bevis Elementary, but she

-3-

spends half of her time dealing with A.B. (Id. at 577-81). She testified that she cannot adequately support the teachers she supervises due to the situation with A.B. (Id. at 582). And, the Assistant Principal, Rebecca Thomas, testified that she spends "a large majority of her day" dealing with A.B., such as responding to his almost-daily crisis situations. (Id. at 616). Likewise, Melissa McGuire, a school psychologist for Hillsborough County, testified that she spends 75% of her time working on A.B.'s case. (Id. at 120).

The professionals at Bevis, along with privately retained therapists, attempted to assist A.B. during the school years and implemented the following supports, among others: "classroom behavior management system; individual student behavior management system; behavior contract; individualized student supervision plan; Functional Behavior Assessment ('FBA')/Positive Behavior Intervention Plan ('PBIP'); a crisis management plan; continuous additional adult assistance; and daily home notes." (Doc. # 28 at 2). During the ALJ hearing, Jamie LeSavage, A.B.'s home room teacher, explained that two ESE professionals accompanied A.B. throughout the day, that A.B. was given a "visual schedule" and has a special dismissal procedure. (Id. at 398, 433). A.B. was also rewarded when he exhibited good behavior. (Id. at 434). A.B.'s assignments

were shortened and reduced, and he received assistance taking notes and other support to stay on task. (Id. at 442). He was able to choose a "preferred activity" instead of working on what the class was working on. (Id. at 447). The door had to be guarded because A.B. frequently ran from the classroom, and he even jumped out of windows to leave the classroom. (Id. at 609-610).[1] To implement such heroic measures, all devoted to A.B.'s safety and success, teachers were required to give up their lunch breaks and come in early before the scheduled school day. (Id. at 613).

Despite supports and interventions too numerous to describe, Burke felt as though A.B. was being denied a free and appropriate public education and therefore filed a Due Process Complaint on November 14, 2016. (Doc. # 23-4 at 2-8). Among other grievances, Burke claimed:

> The school is not currently in compliance with the Student's IEP. The school is currently not in compliance with the student's behavior plan. The school unilaterally decided to change placement and assignment of the student to another school. The school demonstrated procedural violations that resulted in the failure to provide the student with a free and appropriate education.

---

[1] And, not surprisingly, many parents complained that their children were not able to learn due to the many disruptions. (Id. at 400).

(Doc. # 23-4 at 8). The new school, Cimino, has the advantage of "a licensed clinical social worker," full time ESE specialists, and "the full continuum" of supports for students with Autism. (ALJ Hearing Tr. at 198).

The School Board filed its response on November 24, 2016. (Doc. # 23-4 at 15-24). Therein, the School Board defended the decision to move A.B. from his neighborhood school to "a separate class placement" at Cimino due to A.B.'s "664 incidents of unsafe behavior" that were "gravely impeding his ability to receive a FAPE." (Id. at 16). On December 14 and 15, 2016, a due process hearing was held in which A.B. presented the testimony of five witnesses, and the School Board presented the testimony of eleven witnesses. On February 3, 2017, the ALJ entered a lengthy and thoughtful opinion that denied the Due Process Complaint in its entirety. (Id. at 161-210). The ALJ found that A.B. failed to demonstrate that (1) the challenged recommendation set forth in the October 31, 2016, Individualized Education Program (IEP) were unilateral and predetermined; (2) the School Board did not comply with the student's behavior plan; (3) the School Board did not implement certain components of A.B.'s April 2016 IEP; and (4) the proposed placement recommendation was inappropriate.

On April 28, 2017, Burke initiated the present action by filing his pro se Complaint seeking judicial review of the ALJ's decision. (Doc. # 1). Burke filed an Amended Complaint (Doc. # 9) on May 26, 2017. The School Board filed its Answer on July 5, 2017. (Doc. # 17). After initiating these proceedings, Burke relocated to Alexandria, Virginia. (Doc. # 13). The matter has been fully briefed. (Doc. ## 26, 28, 29)).

II. **Discussion**

In addition to challenging the substance of Burke's arguments, the School Board raises a jurisdictional mootness challenge. "Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990). This requirement means that "a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Id.

The actual case or controversy "must be extant at all stages of review, not merely at the time the complaint is filed." Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997). "A case is moot when events subsequent to the commencement of a lawsuit create a situation in which the

court can no longer give the plaintiff meaningful relief." Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents of the Univ. Sys. of Ga., 633 F.3d 1297, 1308 (11th Cir. 2011). "Thus, even a once-justiciable case becomes moot and must be dismissed when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs, Ga., 868 F.3d 1248 (11th Cir. 2017)(internal citation omitted).

As noted, after Burke filed the present appeal of the ALJ's decision, A.B. moved to Virginia and is no longer enrolled in any Hillsborough County School. (Doc. # 13). The School Board argues: "If A.B. has moved out of the District and has no intent to return to the District, there is no relief that the Court can grant Plaintiff. Thus, the Court would essentially be issuing an opinion advising what the law would be upon a hypothetical state of facts." (Doc. # 28 at 23)(citing Hughes v. Dist. Sch. Bd. of Collier Cny., No. 2:06-cv-629-FtM-29DNF, 2008 WL 4709325, at *4 (M.D. Fla. Sept. 22, 2008)).

Burke asks this Court to "return A.B. to a placement in the general education classroom with appropriate support services as identified in the IEP dated September 19, 2016" and to "identify what actions will be taken against school

personnel for the predetermiantion of student placement and assignment." (Doc. # 9 at 5; Doc. # 26 at 21). This is not relief that this Court can grant for a student located outside of the Hillsborough County School District.

In response to the mootness argument, Burke postulates that "there is a chance that I could be reassigned within the school district, as it is home to MacDill AFB" and explains that he moved away from Hillsborough County "in execution of military permanent change of station orders." (Doc. # 29 at 8). Burke's indication that there exists some possibility that he will be reassigned to Hillsborough County again at some time in the future does not overcome the School Board's mootness arguments. The Court recognizes that Burke is a pro se litigant, and the Court is not holding his pleadings and briefs to the same standard as an attorney. <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998). However, even with every leniency provided to Burke in the construction of his submissions, the Court finds that Burke cannot overcome the determination that all of his claims for prospective relief are mooted. <u>GJR Investments, Inc. v. County of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998)(stating that the lenience afforded to pro se parties "does not give a court license to serve as de facto counsel for a party . . .

or to rewrite an otherwise deficient pleading in order to sustain an action").

The Court realizes that the "capable of repetition" doctrine can save a moot case, but only if the plaintiff is likely to be placed in the same position again. See Weinstein v. Bradford, 423 U.S. 147, 149 (1975)("[T]he 'capable of repetition, yet evading review' doctrine [is] limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."). Burke does not come close to meeting these criteria.

Burke also attempts to revive his moot case by asserting that, in addition to prospective relief, he is also making a claim for money damages for ABA services from April 28, 2016, through the present in the amount of $32,568.04. (Doc. # 9 at 5). To be certain, Burke's Amended Complaint filed in this Court seeks money damages. (Doc. # 9 at 5). But, the School Board persuasively argues that "because A.B. did not make that request in the proceedings below, he cannot seek those damages here." (Doc. # 28 at 24). If a matter was not litigated at the ALJ level, it is not a proper matter for the district

court's review.  See Irwin v. Colvin, 8:12-cv-1025-T-23MAP, 2013 WL 4804722, at *3 (M.D. Fla. Sept. 9, 2013)("In this Circuit, the general rule is that an argument not raised in an administrative hearing cannot be raised on appeal.").

In Burke's request for Due Process Hearing, dated November 14, 2016, Burke sets out a lengthy description of A.B.'s "public school experience and present school situation" and recounts many instances in which he claims that A.B. was treated unfairly or denied an appropriate education by the School. (Doc. # 23-4 at 2-8). The request for a Due Process Hearing contains the following language:

> We propose the following resolution to these issues:
> Student assignment returned to Bevis Elementary School. School staff to comply with the current IEP by returning [A.B.] to the general education classroom with proper support as identified in the IEP. School staff comply with and follow the behavioral plan consistently. Implement proper monitoring to include behavior reports to the parents and weekly fidelity checks of the school staff. **Award of compensatory consideration for the amount of time and services denied the student as a result of the denial of a free and appropriate public education.**

(Id. at 8)(emphasis added).

After mentioning an "award of compensatory consideration" in the complaint, Burke never raised the issue at the ALJ hearing. This Court has read every page of the transcripts of

-11-

the multi-day ALJ hearing. (Doc. ## 23-1, 23-2). Not a single mention was made regarding damages for ABA services by Burke. But, Burke did request reimbursement for ABA therapy in his 27-page proposed order to the ALJ. (Doc. # 23-4 at 98). That proposed order says: "The parents provided for 279 hours of ABA therapy between April and December 2016 . . . Because of these facts, the petitioner is entitled to reimbursement for the ABA therapy as compensatory consideration to remedy the multiple denials of FAPE." (Id.). The ALJ did not enter that Order, and in the ALJ's Final Order, the issue of compensatory damages was not addressed.

The School Board correctly argues that Burke did not make a specific request for damages before the ALJ and "furthermore, there is no evidence before the Court regarding the purported ABA services or the amount sought for the Court to even consider said request had it been a proper one." (Doc. # 28 at 24). In response, Burke submits that he demanded compensatory damages "from the beginning of this process." (Doc. # 29 9).

On balance, the Court finds that Burke abandoned his request for reimbursement for ABA services. In T.P. ex rel. T.P. v. Bryan County School District, 792 F.3d 1284, 1292 (11th Cir. 2015), the court found that the parents of a

disabled student abandoned a claim for compensatory damages under the IDEA because the parents did not support or litigate such claim. The court explained:

> We do not consider any claim the Parents might have made for reimbursement for the psychological assessment they obtained in December 2012 because they have neither adequately presented nor supported with argument such a claim at any stage of this litigation. In their opening brief on appeal, the Parents request "reimbursement for the independent psychological evaluation they obtained." Yet they make no argument – let alone argument accompanied by citation - as to why reimbursement is appropriate . . . . This has been the case throughout the litigation: the Parents requested reimbursement in their request for a due process hearing and in the complaint, but they did so by way of isolated sentence fragments without supporting argumentation or citation and without ever alleging when or if they actually paid for the December 17-18 psychological assessment. Perhaps the Parents might have successfully prosecuted a claim for reimbursement. But because they have failed to shoulder the burden of pressing any such claim throughout the course of this litigation, we do not address its merits.

Id. at 1292-93.

Here, after making a request for compensatory damages in the Complaint, Burke never litigated or otherwise supported the request for damages. He has accordingly abandoned that claim. See also NLRB v. McClain of Ga., Inc., 138 F.3d 1418 (11th Cir. 1998)("[I]ssues raised in a perfunctory manner, without supporting arguments and citations to authorities, are generally deemed to be waived.").

The Court therefore dismisses the case.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) This case is dismissed consistent with the foregoing.

(2) The Clerk is directed to enter **JUDGMENT** in favor of Defendant and thereafter, **CLOSE THIS CASE.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 2nd day of March, 2018.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE